The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. The Charlotte-Mecklenburg Hospital Authority is a duly qualified self-insured and Trigon Administrators are the third party administrators.
3. On or about October 2, 1994, an employee-employer relationship existed between the plaintiff and the defendant-employer.
4. Plaintiff's average weekly wage was to be determined from a proffered Form 22 wage chart.
5. Defendant paid benefits totaling $24,295.08 through an employer-funded disability plan from November 28, 1995 through the end of December 1996 and plaintiff was continuing to receive benefits at the time of the hearing before the Deputy Commissioner.
6. A Form 22 wage chart marked as stipulated exhibit 1 was received into evidence.
7. A set of medical records marked as stipulated exhibit 2 was received into evidence.
8. Subsequent to the hearing, the parties submitted an index of medical records. These records were marked as stipulated exhibit 3 and received into evidence.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On October 2, 1995, plaintiff was a registered nurse employed by defendant-employer as a Staff Nurse II in Labor and Delivery.
2. Plaintiff had worked as a registered nurse since 1985 and had been employed by defendant-employer since 1984.
3. Plaintiff testified that her job involved monitoring labor patients, assisting with deliveries, including cesarean sections, and providing recovery room care. All the patients with whom the plaintiff worked were pregnant women of varying sizes and weights. No two deliveries were exactly the same, some were longer than others and some were more difficult. Plaintiff's job was to provide nursing care during the delivery, whether the delivery was long or short, easy or difficult, and with or without an epidural.
4. Approximately eighty percent (80%) of patients in labor and delivery receive epidural injections. Plaintiff agreed that the use of epidurals was a routine part of her job.
5. On October 2, 1995, plaintiff was performing her regular job duties as a registered nurse when she provided medical assistance in the delivery of a child to an expectant mother who was five feet; three inches tall, and weighed two hundred and sixty-three pounds. Plaintiff along with a hospital physician, gave the expectant mother a high dosage epidural which caused the patient to become unable to assist the plaintiff in lifting her right leg. During the delivery, plaintiff held the patient's right leg with her left arm during each contraction during a period that lasted about thirty to forty-five minutes. Plaintiff testified that it was unusual for the expectant mother to be unable to assist her at all in holding her legs up during the process of a vaginal birth. The plaintiff had not done an epidural which rendered the patient unable to move her legs, other than for a cesarean section, since the 1970's.
6. Assisting the patient to lift her legs was a job expectation and was required with some deliveries. During the delivery in question, plaintiff did not feel any pain nor did she report pain to the doctor, the patient, the patient's husband or anyone else. She noticed that her left shoulder was aching later that evening. Plaintiff worked full shifts the next two days and first reported the alleged injury to her Nurse Manager, Denise White, on October 4, 1995.
7. Denise White testified that there was nothing typical about delivery room care and that the epidurals affect patients differently. Some patients may have a complete block like the patient that plaintiff was assisting, or a patient may be able to assist in the delivery process. The desired effect of an epidural is to leave the patient with some ability to move her legs. However, holding a patient's leg during each contraction during a thirty to forty-five minute time period would not be unusual, according to Ms. White.
8. Plaintiff did not mention an accident or anything unusual during delivery when she reported her shoulder problem to Ms. White.
9. The plaintiff underwent a debridement of her left shoulder rotator cuff and an arthroscopic subcranial decompression on January 17, 1996. The plaintiff has not been back to work for the defendant-employer or any other employer since the surgery on January 17, 1996.
10. On November 28, 1995, plaintiff began receiving long term disability through a disability plan wholly funded by defendant-employer.
11. On May 29, 1996, plaintiff was involved in a car accident in which she was rear-ended. As a result of that car accident plaintiff suffers knee injuries unrelated to her work with the defendant-employer. At the time of the hearing before the Deputy Commissioner, the plaintiff remained out of work because of those injuries.
12. On October 25, 1996, Dr. Barron rated plaintiff as having reached maximum medical improvement. He gave the plaintiff a ten percent (10%) permanent partial disability rating to the left shoulder. This was the last time that the plaintiff has received treatment for her shoulder. At the time that the plaintiff received this disability rating, she was out of work for unrelated knee problems.
13. Plaintiff did not suffer an injury by accident arising out of the course and scope of her employment with the defendant-employer on October 12, 1994. Plaintiff's injury occurred while performing her usual employment duties in the usual way. Plaintiff did not sustain an accident within the meaning of N.C. Gen. Stat. § 97-2(6).
14. While plaintiff did suffer some bodily injury on October 2, 1995, the injury was not a result of any unforeseen or unusual event and is therefore not a compensable injury by accident.
15. Plaintiff has not met her burden of showing that her current disability is causally related to an injury by accident sustained during the normal course and scope of her employment with the defendant-employer.
16. As of October 2, 1995, plaintiff's average weekly wage was $887.89.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 2, 1995, the plaintiff sustained an injury on the job that was not an injury by accident because she was doing her usual job in her usual way and the circumstances leading to her injury were not sufficient to constitute an interruption of her usual work routine. N.C. Gen. Stat. § 97-2(6), Poev. Acme Builders, 69 N.C. App. 147, 316 S.E.2d 338, cert denied, 311 N.C. 762, 321 S.E.2d 143 (1984).
2. Plaintiff's work related injury is not compensable.
3. Plaintiff, not having carried her burden of proving an injury by accident and resulting disability, is not entitled to compensation under the Workers' Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay its own costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________ LAURA K. MAVRETIC COMMISSIONER
BSB:jth